UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

In re                                                                                  Chapter 11
Brian A. Hansen and
Amie R. Hansen,                                                          Case No. 15-29453-svk
                    Debtors.

**DECISION AND ORDER ON MOTION FOR RELIEF FROM INJUNCTION**

Are obligations owed to the State of Wisconsin for failure to maintain worker's compensation insurance dischargeable in bankruptcy? The State's Department of Workforce Development, Worker's Compensation Division ("DWD") has asked for a determination that such a claim survived the confirmation of Brian Hansen's Chapter 11 plan. DWD assessed a penalty against H&S Landscape Products, Inc. ("H&S") for a lapse in required worker's compensation coverage. Mr. Hansen was the sole stockholder, president and operating officer of H&S, and as such he is personally liable as a responsible person under Wis. Stat. § 102.83(8). DWD asserts that the debt is nondischargeable and the confirmation order does not prevent its collection.

I.      Statement of Facts

According to stipulated facts, H&S filed for receivership on January 26, 2015; after the sale of H&S's assets, the receivership was closed in 2016. (Docket 115 (the "Stipulation") at ¶¶ 1, 3.) The Debtors filed this individual Chapter 11 case on August 18, 2015, and the Court entered an order setting October 30, 2015 as the claims bar date. (Docket No. 14.) On September 18, 2015, DWD sent H&S a penalty notification assessing a penalty of $128,361.98 for a lapse in worker's compensation insurance coverage. (Stipulation at ¶ 13.) The Debtors responded on October 6, 2015 by sending DWD a copy of the order setting the claims bar date. (*Id.* at ¶ 14.) On October 14, 2015, "State of Wisconsin, DWD - Unemployment Insurance" filed

a proof of claim for $32,295.58.  DWD did not file a proof of claim for the worker's compensation debt.

On June 2, 2016, the Court confirmed the Debtors' plan.  (Docket No. 84.)  The plan expressly addressed the claims filed by DWD's Unemployment Insurance Division and the Wisconsin Department of Revenue.  (Docket No. 66-1 at ¶ 3.2(b).)  The plan provided for general unsecured creditors to receive annual installments equal to the reorganized Debtors' disposable income.  (*Id*. at ¶ 3.4.)  It also contained a statement that the confirmation order would provide that creditors were enjoined from enforcing their claims after the effective date, but the Court's order did not contain an injunction.  (*Id.* at ¶ 8.2.)

On May 12, 2017, DWD filed the instant Motion for Relief from Injunction.  DWD argues that the injunction anticipated in the plan is ineffective, and any injunction contained in the plan is void.  Bankruptcy Rule 3020(c)(1) states that if a plan "provides for an injunction against conduct not otherwise enjoined under the Code, the order of confirmation shall (1) describe in reasonable detail all acts enjoined; (2) be specific in its terms regarding the injunction; and (3) identify the entities subject to the injunction."  The confirmation order in this case contains no such language.  If the injunction is valid, DWD alternatively seeks relief from the injunction, claiming that it violates the Bankruptcy Code in essentially discharging nondischargeable debts by permanently enjoining their collection.

The Debtors argue that the debt owed to DWD based on H&S's failure to maintain worker's compensation insurance is dischargeable and that another division of DWD filed a proof of claim.  According to the Debtors, the only way for DWD to pursue the claim is by amending the proof of claim filed by the Unemployment Insurance Division or filing a new claim, which it cannot do following confirmation and substantial consummation of the plan.

2

II.     Jurisdiction and Procedural Matters

The Debtors suggest that DWD's motion was precipitated by a notice of levy on a bank account owned by Russ's Mulch & Topsoil, Inc., one of Mr. Hansen's companies. They assert that DWD cannot collect its claim from Russ's Mulch or Four Seasons Landscaping & Maintenance of Brookfield, LLC, another one of Mr. Hansen's companies. They request that the Court "order that DWD is prohibited from collecting in any manner from Russ's Mulch or Four Seasons, including levies on their bank accounts." (Docket No. 117 at 4.) The Debtors emphasize that plan payments to unsecured creditors are funded from the operations of these companies, and that any collection from Russ's Mulch would interfere with their performance under the plan. But neither Russ's Mulch nor Four Seasons Landscaping filed bankruptcy. The Debtors offer no argument as to how the Court has jurisdiction to enter an order enjoining collection efforts against these non-debtor entities, and DWD notes that it is prosecuting a claim only against Mr. Hansen. (Docket No. 118 at 1.) Given the jurisdictional issues, whether Mr. Hansen's other companies are liable for DWD's claim against H&S or Mr. Hansen is beyond the scope of this decision.

A proceeding to determine the dischargeability of debt is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (I). The Court has jurisdiction pursuant to 28 U.S.C. § 1334 and the order of reference entered pursuant to 28 U.S.C. § 157(a). Bankruptcy Rule 7001(6) provides that a proceeding to determine the dischargeability of a debt is an adversary proceeding. However, parties may waive this requirement. *See, e.g.*, *In re Mark Twain Marine Indus., Inc.*, 115 B.R. 948, 949 n.1 (Bankr. N.D. Ill. 1990) (finding parties waived the right to an adversary proceeding and deciding matter by way of motion "[i]n the interest of saving both parties additional costs and expenses attendant to a formal adversary proceeding, and in the interest of judicial economy."). Here, counsel for the parties have agreed that "the most cost-effective and

3

efficient way to resolve the motion is in a summary-judgment type manner. The facts likely are not in dispute and the issue would likely be a legal one that the Court could decide on briefs." (Debtors' Objection, Docket No. 108 at 2.)

III.     Confirmation of the Plan Binds Creditors Owed Dischargeable Debts

The parties disagree on the effect of the injunction described in the plan.  The plan states: "The Confirmation Order will provide, *inter alia*, that, except as otherwise provided for in the Plan, all Persons who have held, hold or may hold Claims are permanently enjoined from and after the Effective Date from" certain collection activities.  (Docket No. 66-1 at ¶ 8.2.) However, the order contains no such injunction.  Bankruptcy Rule 3020(c) also states that if a plan provides for an injunction against conduct not enjoined under the Bankruptcy Code, the confirmation order should address the injunction in a certain manner.  But the Court need not reach the issue of the validity of the phantom injunction, since even if the plan and confirmation order contained such an injunction, it would not be effective to enjoin the collection of a nondischargeable debt.  *See McClendon v. Springfield*, 505 B.R. 786, 793 (E.D. Tex. 2013) (plan injunction did not bar creditor from pursuing declaration of nondischargeability).  Instead, the Bankruptcy Code itself governs the rights of creditors after confirmation of a Chapter 11 plan.

Bankruptcy Code § 1141(a) provides:

Except as provided in subsections (d)(2) and (d)(3) of this section, the provisions of a confirmed plan bind the debtor, any entity issuing securities under the plan, any entity acquiring property under the plan, and any creditor, equity security holder, or general partner in the debtor, whether or not the claim or interest of such creditor, equity security holder, or general partner is impaired under the plan and whether or not such creditor, equity security holder, or general partner has accepted the plan.

Thus, a confirmed plan generally binds creditors who do not even participate in the Chapter 11 case, which would include the Worker's Compensation Division of DWD in this case.  *See* 11 U.S.C. §§ 101(10) (definition of "creditor"), 101(5) (definition of "claim").  This binding effect

4

is tempered by notions of due process. *See Sequa Corp. v. Christopher (In re Christopher)*, 28 F.3d 512 (5th Cir. 1994) (actual notice of bankruptcy is required before plan binds creditor); *Shu Lun Wu v. May Kwan Si, Inc.*, 508 B.R. 606 (S.D.N.Y. 2014) (creditor of individual debtor not bound by plan where creditor did not receive notice of claims bar date). Here, there is no dispute that DWD – and in fact the Worker's Compensation Division of DWD – received actual notice of the claims bar date. (Stipulation at ¶ 14.) Another division of DWD responded by filing a timely proof of claim. Accordingly, DWD is bound by the terms of the confirmed plan, except as provided in subsection (d)(2) or (d)(3) of § 1141.

Section 1141(d)(2) may apply to preserve DWD's collection rights against Mr. Hansen. That exception states that an individual debtor does not receive a discharge of debts excluded from discharge under § 523. If Mr. Hansen's debt to DWD for the worker's compensation penalty is nondischargeable, then DWD is not bound by the plan and may continue with its collection efforts.

The court faced a similar set of facts in *Grynberg v. United States (In re Grynberg)*, 986 F.2d 367 (10th Cir. 1993). In that case, the Chapter 11 debtors scheduled the United States as a disputed creditor for income and gift taxes. The IRS filed a timely proof of claim for the income tax liability, but did not file a proof of claim for the gift tax liability, which was nondischargeable as an excise tax. After consummation of the debtors' plan, the IRS sent a notice of proposed deficiency and penalties, and the debtors filed an adversary proceeding to enjoin collection of the gift tax debt. The debtors cited numerous cases "emphasizing the finality of bar orders and prohibiting the IRS from filing additional proofs of claim after the bar date has passed." *Id.* at 370. The Tenth Circuit Court of Appeals rejected their argument. "These cases establish only that the IRS is bound to submit its proofs of claim like any other creditor or be foreclosed from participating in the debtor's reorganization. However, like any other holder of a

5

nondischargeable debt, the IRS is also free to pursue the debtor outside bankruptcy." *Id.* The same is true here if the debt to DWD is nondischargeable. The fact that DWD did not file a proof of claim for the debt at issue precludes DWD from receiving a distribution under the Debtors' plan. But § 1141(a) would not bar DWD from ignoring the plan and recovering on its claim if the debt is nondischargeable.

IV.  Dischargeability of Debt

DWD argues the debt is nondischargeable under 11 U.S.C. § 523(a)(7) as a penalty or under § 523(a)(1)(A) as an excise tax. Exceptions to discharge are construed liberally in favor of the Debtors. *See In re Scarlata*, 979 F.2d 521, 524 (7th Cir. 1992). As the party seeking a determination that a debt is nondischargeable, DWD must prove the elements of one of the exceptions by a preponderance of the evidence. *See Grogan v. Garner*, 498 U.S. 279 (1991).

The debt at issue here stems from H&S's failure to carry worker's compensation insurance as required by Wisconsin law. *See* Wis. Stat. § 102.28(2)(a). There are two consequences if an employer fails to carry insurance. First, under Wis. Stat. § 102.82(1), the employer must reimburse the DWD for any payment made on an employee's or dependent's claim. Second, the employer must pay the greater of

1.  Twice the amount determined by the department to equal what the uninsured employer would have paid during periods of illegal nonpayment for worker's compensation insurance in the preceding 3-year period based on the employer's payroll in the preceding 3 years.
2.  Seven hundred and fifty dollars.

Wis. Stat. § 102.82(2)(a). Both reimbursement payments under § 108.82(1) and "lapse-only" payments under § 108.82(2)(a) are placed in a fund called the Uninsured Employers Fund ("UEF") and are only used to make payments to injured employees of uninsured employers and possibly for reinsurance. *See* Wis. Stat. § 102.80(1)(a), (1m); *see also* Wis. Stat.

6

§ 20.445(1)(sm). This case involves a lapse-only payment, not a payment for reimbursement of an injured employee. (Stipulation at ¶ 13.)

    A.    <u>The Debt is Not an Excise Tax That Would be Nondischargeable under 11 U.S.C. § 523(a)(1)(A)</u>

A debt for a priority tax specified in Bankruptcy Code § 507(a)(8) is nondischargeable under § 523(a)(1)(A). Section 507(a)(8)(E) provides priority for an "excise tax" on transactions during designated time periods. "The term 'excise tax' is not defined in the Bankruptcy Code, but included are estate and gift, sales, franchise, occupation, gasoline, truck, and special fuel taxes. Black's Law Dictionary defines the term as 'A tax imposed on the manufacture, sale or use of goods (such as a cigarette tax), or on an occupation or activity (such as a license tax or an attorney occupation fee).'" Susan V. Kelley, Ginsberg & Martin on Bankruptcy § 18.06[I][5] (5th ed. Supp. 2017) (citations omitted).

In *United States v. Reorganized CF&I Fabricators*, 518 U.S. 213 (1996), the Supreme Court reviewed the priority of a debt imposed under a section of the Internal Revenue Code titled "Miscellaneous Excise Taxes" for the debtor's failure to maintain a fully funded pension plan. The Court said: "A tax is an enforced contribution to provide for the support of government; a penalty, as the word is here used, is an exaction imposed by statute as punishment for an unlawful act." 518 U.S. at 224 (*quoting United States v. La Franca*, 282 U.S. 568, 572 (1931)). The Court determined this "statement of the distinction to be sufficient for the decision of this case; if the concept of penalty means anything, it means punishment for an unlawful act or omission, and a punishment for an unlawful omission is what this exaction is." *Id.* Given the

7

punitive nature of the "tax" for failing to maintain the pension funding, the Court held it was not an excise tax entitled to priority.

This reasoning in *CF&I* applies here. The alleged excise tax was only imposed because H&S failed to maintain worker's compensation coverage in violation of the law, just as the tax in *CF&I* was imposed for the debtor's failure to maintain a fully funded pension account. DWD admits the punitive nature of the obligation, conceding that the obligation operates only as a penalty and does not serve a compensatory purpose because the State does not purchase substitute insurance. (Docket No. 116 at 4.)

Cases such as *California Self-Insurers Security Fund v. Lorber Industries (In re Lorber Industries)*, 564 F.3d 1098 (9th Cir. 2009) (California Self-Insurers' Security Fund claim was not an excise tax); *New Neighborhoods, Inc. v. West Virginia Workers' Compensation Fund*, 886 F.2d 714 (4th Cir. 1989) (worker's compensation premiums due the State are priority excise taxes); and *Yoder v. Ohio Bureau of Workers' Compensation (In re Suburban Motor Freight)*, 998 F.2d 338 (6th Cir. 1993) (same) are distinguishable. These cases construe obligations for a debtor's failure to pay either reimbursement claims for an injured worker or <u>premiums</u> to the State for compulsory worker's compensation coverage provided by the State. They do not involve a penalty imposed by a State for a debtor's failure to maintain private worker's compensation insurance. This case involves such a penalty, and the Court's analysis is guided by *CF&I*. Since the function of the obligation here is not to support the government but rather to punish the Debtor for his company's failure to maintain worker's compensation coverage, the obligation is a penalty, not an excise tax.

B.  <u>The Debt is Not a Nondischargeable Penalty under 11 U.S.C. § 523(a)(7)</u>

Having concluded that DWD's claim is not nondischargeable as an excise tax, the issue is whether it is a nondischargeable penalty under 11 U.S.C. § 523(a)(7). To qualify under this

subsection, a debt must be (1) a fine, penalty, or forfeiture; (2) payable to and for the benefit of a governmental unit; (3) not compensation for actual pecuniary loss; and (4) not a specified tax penalty. The first, third, and fourth requirements are satisfied here. The statute penalizes employers for failure to maintain insurance by charging them certain amounts. A lapse-only payment is also not compensation for actual pecuniary loss. The State did not have to pay any claims to injured employees of H&S, and DWD admits that the "State does not purchase substitute insurance when a lapse in coverage occurs" so the "charges do not repay the State for the cost of any such substitute insurance." (Docket No. 116 at 4.) The debt is also payable to a governmental unit, satisfying part of the second requirement.

However, it is less clear that the debt is payable <u>for the benefit of</u> a governmental unit. In *Kelly v. Robinson*, 479 U.S. 36 (1986), the Supreme Court held that restitution imposed by a state criminal court as part of a criminal sentence falls within this exception to discharge. In *Kelly*, the Court determined the restitution was payable to and for the benefit of a governmental unit because "criminal proceedings focus on the State's interests in rehabilitation and punishment, rather than the victim's desire for compensation." Thus, the restitution order operated "for the benefit of" the State. *Kelly*, 479 U.S. at 53.

Subsequently, the Seventh Circuit Court of Appeals held that certain civil restitution was not covered by § 523(a)(7). *In re Towers*, 162 F.3d 952 (7th Cir. 1998). In *Towers*, the court determined that a civil restitution order obtained by the Attorney General of Illinois on behalf of fraud victims under the Illinois Consumer Fraud and Deceptive Business Practices Act did not come within the exception. It was not payable to and for the benefit of a governmental unit. A state statute and court order suggested that the Attorney General was required to disburse the funds to victims, and the court characterized this as the governmental body "collecting for private creditors." *Id.* at 954. The Seventh Circuit recognized that the restitution may have a

9

benefit to citizens in deterring fraud, but the court read § 523(a)(7) to suggest that the governmental unit ought to receive a financial benefit.  The court observed that "neither the people of Illinois nor any governmental unit receives a *financial* benefit from the restitution that Towers has been directed to pay, and the 'governmental unit' does not receive any benefit from general deterrence either." *Id.* at 956.  Under *Towers,* courts should not interpret "benefit" in § 523(a)(7) to include "generalized positive public effect."  *Kish v. Farmer (In re Kish)*, 238 B.R. 271, 286-87 (Bankr. D.N.J. 1999).  Otherwise, it "would distort the meaning of section 523(a)(7) to bring within its coverage any and all monetary obligations which may in some way inure to the general welfare of the state's citizens."  *Id.*

In this case, the Debtors argue that the penalty is not payable for the benefit of a governmental unit because the funds are paid to the Uninsured Employers Fund, and these funds can only be spent to benefit injured employees or to buy reinsurance to pay those claims.  DWD argues that although the funds in the UEF are ultimately paid out to injured employees or for reinsurance, payments to the Fund "also offer a benefit to the state: they assure that DWD can compensate the injured employees without dipping into other funds."  (Docket No. 118 at 4.)  According to DWD, the State's purpose in receiving the funds is to defray the cost of worker's compensation for injured employees of Wisconsin's uninsured employers "without devoting other state resources to that end."  (*Id.*)

The Debtors make the more persuasive argument.  *New Jersey Department of Labor & Workforce Development, Office of Special Compensation Funds v. Moran-Hernandez (In re Moran-Hernandez)*, 544 B.R. 796 (Bankr. D.N.J. 2016) is directly on point.  In that case, the State assessed a penalty against the debtor for failure to maintain worker's compensation insurance.  A New Jersey statute permitted the State to use some money from the uninsured employer's fund for administrative expenses, as long as the total amount did not exceed $10,000

10

during any fiscal year.  However, even though the State pointed to its ability to use some of the penalty for State expenses, the court denied the State's summary judgment motion, requiring it to demonstrate that the state budget authorized it to use the penalties assessed in the relevant fiscal year for operations.

Another bankruptcy court in the district, in an unpublished opinion, had previously determined on reconsideration that the penalty was not payable for the benefit of a governmental unit, notwithstanding the fact that the statute allocated a small portion of it to administrative costs.  *See In re Hurtado*, No. 10-48668 (DHS), 2015 Bankr. LEXIS 292 (Bankr. D.N.J. Jan. 29, 2015).  (The Debtors cited the bankruptcy court's original opinion, designated not for publication, in their brief.)  According to this court, the clear legislative intent of the statute was to provide payment to claimants, not to fund administrative operations.  The fact that such a small portion of the penalty could be used for operations indicated that the legislature intended the penalties "to be used, almost exclusively, to benefit injured employees and not the government."  *Id.* at *11.

Here, no portion of the penalty can be used to fund State operations.  Rather, the funds from Wisconsin's UEF are used <u>solely</u> to make payments to injured employees of uninsured employers and possibly for excess or stop-loss reinsurance.  *See* Wis. Stat. §§ 102.80; 102.81(2); 20.445(1)(sm).  In fact, Wis. Stat. § 102.80 establishes the fund as a "separate, nonlapsible trust fund" confirming that payments made to the UEF are held for the benefit of injured workers, not the State.  DWD suggests that the UEF furthers a legitimate state purpose, not that the State receives anything beyond a benefit to the general welfare of its citizens.  Under *Towers* and *Moran-Hernandez*, this generalized benefit does not qualify as a penalty payable for the benefit of a governmental unit.  Accordingly, the debt does not fall within § 523(a)(7)'s exception to discharge and is dischargeable.

V.  Conclusion

DWD received notice of the claims bar date in the Debtors' Chapter 11 case, and one of its divisions responded by filing a proof of claim. The Worker's Compensation Division did not file a claim, and ran the risk that its claim would be determined to be dischargeable. By virtue of § 1141(a) and (d)(2), collection of a nondischargeable debt does not violate a confirmed plan. But the only two potentially applicable discharge exceptions, for excise taxes and noncompensatory penalties, do not apply. Accordingly, DWD is bound by the terms of the confirmed plan, and cannot pursue collection from Mr. Hansen. Assuming the Debtors complete the payments under the Chapter 11 plan or qualify for a hardship discharge, they will receive a discharge under § 1141(d)(5) that will include Mr. Hansen's personal liability for H&S's unpaid worker's compensation penalties.

IT IS THEREFORE ORDERED:  DWD's Motion is denied.

Dated: November 14, 2017

By the Court:

*Susan Kelley*
Susan V. Kelley
Chief U.S. Bankruptcy Judge